MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
(212) 786-7368 (phone)
(212) 786-7369 (fax)
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| ROBERTO PEREZ, | **COMPLAINT** |
| *Plaintiff*, | **05 CV 3963 (SHS)** |
| -against- | **Jury Trial Demanded** |
| PINNACLE MANHATTAN LLC, | |
| *Defendant*. | **ECF Case** |

-----------------------------------------------------------X

      Plaintiff Roberto Perez, by his attorney, Michael Faillace & Associates, P.C., alleges upon knowledge as to himself and upon information and belief as to all other matters as follows:

### NATURE OF ACTION

      1.    Plaintiff Roberto Perez ("Plaintiff" or "Perez") was employed as a building superintendent for Defendant Pinnacle Manhattan LLC ("Pinnacle" or "Defendant") from on or about October 2003 until on or about March 25, 2005.

      2.    In violation of federal and state labor laws, Pinnacle maintained a policy and practice of requiring Plaintiff to work in excess of ten hours per day, six days per week without paying him minimum wage and overtime compensation to which he was entitled. In addition, Pinnacle failed to pay Perez for a basement renovation project he completed on behalf of Defendant and to reimburse him for the costs related to his employment. Plaintiff now brings this action to recover unpaid minimum wages and overtime premiums, liquidated damages, interest,

attorneys' fees, and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, New York Labor Law § 652 *et seq.*, the "spread of hours" wage order of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4 and 142-2.20 (2005) (herein the "Spread of Hours Wage Order"), and state contract and tort law.

## JURISDICTION AND VENUE

3.	This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367(a).

4.	Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of New York within this district. Defendant resides in this district and Plaintiff was employed by Defendant in this district.

5.	This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202.

## PARTIES

6.	Plaintiff Roberto Perez resides at 354 West 110th Street, Apartment #1B, New York, New York 10025.

7.	Defendant Pinnacle Manhattan LLC is a corporation organized and existing under the laws of the State of New York and is located at One Penn Plaza, Suite 4000, New York, New York 10019.

8.	Defendant is subject to the jurisdiction of this Court.

**FACTUAL ALLEGATIONS**

9.  In or around 1995, Perez began working as a superintendent for the apartment building located at 354 West 110th Street, New York, New York 10025 ("110th Street"). Prior to 2003, Perez was employed by Prime Realty Services LLC ("Prime Realty").

10. In or around 2003, Pinnacle replaced Prime Realty as the management agency for the building and became Perez's employer. At that time, Pinnacle assigned Perez to cover two buildings: in addition to 110th Street, Perez also acted as the superintendent for the Pinnacle-managed building at 171 East 102nd Street, New York, New York 10029 ("102nd Street").

11. At all times relevant to this action, Pinnacle was Plaintiff's employer, possessing the power to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

12. During his ten years of service, Perez was a trusted and valued employee.

13. While employed for Pinnacle, Perez reported to Rafael Gonzalez ("Gonzalez"). Gonzalez controlled Plaintiff's work schedule, daily job assignments, compensation, and hours of employment. Gonzalez had the power to hire and fire employees.

14. Perez's regular work schedule was from 9:00 A.M. until 5:00 P.M. Monday through Friday and 10:00 A.M. to 4:00 P.M. on Saturdays. Because his responsibilities covered two buildings, he also spent part of his day traveling between the two buildings. Unlike Prime Realty, however, Pinnacle required Perez to respond to non-emergency work requests after his regular shift had ended. As a result, Perez would often work until 7:00 or 8:00 P.M. each night. In addition, Perez would also respond to tenant calls in the middle of the night. Perez estimates that he regularly approximately sixty-five to seventy hours per week.

15. The interval between the beginning and end of Perez's workday regularly exceeded ten hours.

16. Perez's compensation from Pinnacle included a weekly salary of $200, lodging benefits, and payment based on a job rate. For example, Pinnacle would pay Perez a variable sum of money for various repair jobs including, but not limited to, tile work, painting, plastering, installing and servicing radiators and heaters.

17. In or about March 2003, a fire damaged the 110th Street basement. With Pinnacle's knowledge and approval, Perez repaired and renovated the basement from October 2003 until January 2004. Gonzalez assured Perez that Pinnacle would reimburse him for the costs and expenses incurred. Relying upon Gonzalez's statements and Pinnacle's history of reimbursing him for work-related expenses, Perez accrued approximately $14,000 in costs. During this time period, Perez worked at least eighty hours per week.

18. Perez renovated the basement at Pinnacle's request and for its use and benefit. However, Pinnacle neither paid him for the additional labor nor reimbursed him for the costs and expenses incurred.

19. In or around January 13-15, 2005, Hugo Reyes, requested to rent space in 102nd Street and gave Perez three money orders, which were made payable to Pinnacle. The next day, Perez handed the money orders to Gonzalez. A few weeks later, Perez was informed that Pinnacle never received the money orders, and shortly thereafter, Gonzalez accused Perez of stealing the money orders.

20. Perez did not steal the money orders. Moreover, the money orders were made payable to Pinnacle and thus impossible for Perez to cash. When Perez informed Gonzalez and John Lopez, a Pinnacle Manager, that he did not steal the money orders and did not have them in

his possession, Gonzalez and Lopez threatened to call the police to arrest both Perez and his wife. Under duress and in fear for his family, Perez succumbed to their treats and intimidation and paid them $2,700 of his own money. Upon receiving the $2,700, Pinnacle immediately fired Perez, falsely accusing him of being a "crook."

21. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York State Labor Law by failing to maintain accurate timesheets and payroll records.

22. At no time during the course of this action did Plaintiff ever observe on Defendants' premises any posted notice regarding employees rights under the Fair Labor Standards Act or the New York State Labor Law and Regulations, or the procedures for filing a charge for violations of these state and federal labor laws.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act

23. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

24. Defendant is an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

25. At all times relevant to this action, Pinnacle was engaged in commerce or in an industry or activity affecting commerce.

26. Pinnacle constitutes an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r). The gross annual income for the enterprise exceeds $500,000.

27. Defendant knowingly paid Plaintiff less than the federally mandated minimum wage in violation of 29 U.S.C. § 206.

28. Defendant intentionally failed to pay Plaintiff overtime at the rate of one and one-half times his regular rate for each hour worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 201 *et seq*.

29. Defendant's failure to pay Plaintiff minimum wage and premium overtime was willful within the meaning of 29 U.S.C. § 255(a).

30. Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### New York State Labor Law

31. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

32. Defendants knowingly paid Plaintiff less than the minimum wage in violation of N.Y. Lab. Law § 652(1) and supporting regulations of the New York State Department of Labor.

33. Defendant intentionally failed to pay Plaintiff overtime at the rate of one and one-half times his regular rate for each hour worked in excess of forty (40) hours per week in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor.

34. Defendant's failure to pay Plaintiff minimum wage and premium overtime was willful within the meaning of N.Y. Lab. Law § 663.

35. Defendant failed to pay Plaintiff in a timely fashion, as required by Article 6 of the New York Labor Law.

36. Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### The Spread of Hours Wage Order
### of the New York Commission of Labor

37. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

38. Defendant failed to pay Plaintiff an additional hour's pay at the minimum wage for each day Plaintiff worked more than ten hours in violation of N.Y. Lab. Law §§ 190 *et seq.* and the wage order of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4 and 142-2.20.

39. Defendant's failure to pay Plaintiff an additional hour's pay for each day Plaintiff worked in excess of ten hours was willful within the meaning of N.Y. Lab. Law § 663.

40. Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### Breach of Contract

41. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

42. Plaintiff entered into an oral contract with Defendant to perform work related to a basement renovation project, in which Pinnacle agreed to pay Plaintiff for his labor and to reimburse Plaintiff for the costs and expenses incurred related to the project.

43. In reliance on Defendant's promises and assurances of payment, Plaintiff completed the renovation project and incurred approximately $14,000 in costs and expenses. Plaintiff removed fire-damaged structures, installed new flooring, walls, electrical systems, plumbing, appliances and fixtures, and performed other work related to the renovation.

44. Defendant refused to pay Plaintiff for his labor and to reimburse costs and expenses incurred.

45. Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

46. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

47. Defendant has enriched itself as a result of withholding money owed to Plaintiff.

48. Defendant has also enriched itself as a result of coercing Plaintiff to pay Defendant $2,700 for money orders misplaced or stolen by Defendant's management.

49. The enrichment was at Plaintiff's expense because Plaintiff would have received the money owed had Defendant not intentionally and willfully violated federal and state labor laws.

50. The circumstances were such that equity and good conscience require Defendant to pay Plaintiff for all the time he worked but was not paid and the costs and expenses that were not reimbursed.

## SIXTH CAUSE OF ACTION
### Quantum Meruit

51. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

52. Plaintiff performed labor and services for Defendant in good faith and with the expectation that he would receive full payment.

53. Defendant received the full benefit of Plaintiff's labor and services, but failed to compensate him for the fair and reasonable value of those labor and services.

54. By reason of Defendant's conduct, Plaintiff sustained damages in the amount of the fair and reasonable value of his labor and services to be determined at trial.

55. Defendant knowingly violated federal and state laws by failing to compensate Plaintiff adequately and properly.

56. Defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Thus, an award of punitive damages, in an amount to be determined at trial, is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

(a) For unpaid wages, including minimum wages, overtime premiums, and spread of hours pay under the FLSA and New York Labor Law;

(b) For all unpaid hours worked and unreimbursed expenses by which Defendant has been unjustly enriched;

(c) For liquidated damages in an amount equal to the minimum wage, spread of hours pay, and overtime compensation owed pursuant to 29 U.S.C. § 216(b);

(d) For liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to § 198 of the New York Labor Law;

(e) For compensatory damages for quantum meruit under state law;

(f) For punitive damages for quantum meruit under state law;

(g) For prejudgment interest;

(h) For reasonable attorneys' fees, together with the costs and expenses incurred in this action; and

(i) For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: New York, New York
April 19, 2005

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____
Michael Faillace [MF-8436]
90 Park Avenue, Suite 1700
New York, New York 10016
(212) 786-7368 (phone)
(212) 786-7369 (fax)
*Attorneys for Plaintiff*